## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM O. DAVISON** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil No. 1:06CV780-HSO-JMR** |
| | § | |
| **HUNTINGTON INGALLS, INC.** | § | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER COMES BEFORE THE COURT on a Motion for Summary Judgment filed by Defendant Huntington Ingalls, Inc.[1] ["Defendant"] on February 14, 2011 [464].  On April 19, 2011, Plaintiff William O. Davison ["Davison"] tendered a Response [467], and on May 6, 2011, Defendant filed its Rebuttal [470]. After due consideration of the record, the submissions on file, and the relevant legal authorities, the Court finds that because Davison is unable to maintain his claims as a matter of law, Defendant is entitled to summary judgment.

## I. FACTS AND PROCEDURAL HISTORY

A. Procedural History

An initial Complaint [1] was filed in this Court on March 21, 2001, and a First Amended Complaint [2] was filed on April 26, 2001, naming eleven (11)

---

[1]Counsel for Defendant filed a Motion to Substitute Party on September 8, 2010.  The Court granted the Motion as unopposed and Defendant's name in the style of the case was changed from "Northrop Grumman Ship Systems, Inc.," to "Northrop Grumman Shipbuilding, Inc."  Counsel filed another Motion to Substitute Party on June 7, 2011, which was granted by Text Order dated June 29, 2011. Defendant's name in the style of the case was changed to "Huntington Ingalls Incorporated."

individuals and the Ingalls Workers for Justice as Plaintiffs.  Davison was not a named Plaintiff in the original suit.[2]  Named Defendants were Ingalls Shipbuilding Company, Litton Industries, and Northrop Grumman.  As detailed in its Memorandum Opinion [16] of February 27, 2002, and pursuant to its Judgment of February 28, 2002 [17], the Court dismissed Plaintiffs' Thirteenth Amendment and Title VI claims, dismissed Litton Industries and Northrop Grumman as Defendants, dismissed Ingalls Workers for Justice as a Plaintiff, and dismissed Plaintiffs' class action claims.

On July 16, 2002, by way of a Motion for Leave to File a Complaint in Intervention [27], putative class members requested leave to intervene as Plaintiffs in this action, pursuant to Federal Rule of Civil Procedure 24.  A Second Amended Complaint [48] was filed on April 7, 2003.  Subsequently, Defendant's Motion to Sever was granted by Order entered August 17, 2006 [360], which required Plaintiffs to file separate complaints.  Following severance of his claims, Davison filed his present Complaint [362] on September 29, 2006.

In 2008, the Court entered an Order administratively closing all the severed cases while the claims of all but fourteen (14) plaintiffs were heard and resolved through arbitration.  Davison was one (1) of the fourteen (14) who opted out of the arbitration proceedings.  Upon conclusion of the various arbitrations, on June 16, 2010, the Court reopened the above captioned cause.  Following a status conference

---

[2]Davison was one (1) of one hundred forty-three (143) individuals who comprised the Ingalls Workers for Justice and who filed a charge with the Equal Employment Opportunity Commission on January 28, 2000.

held on August 23, 2010, the Court reset this case for trial on the Court's August 2011 trial calendar.  Upon a Joint Ore Tenus Motion of the parties on July 5, 2011, the Court continued the trial and reset it on the Court's October 2011 trial calendar. Order [475], at p. 1.

B.     Factual Background

William Davison was first hired by Defendant in its shipyard on November 17, 1972.  Aff. of William Davison, at ¶¶ 1–3, attached as Ex. "1" to Pl.'s Resp.  As of April 15, 2011, Davison still worked at the shipyard as a First Class Structural Welder.  *Id.*

In his Complaint, Davison seeks injunctive and declaratory relief to prevent alleged systemic and unjustified race discrimination by Defendant with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of African-American employees.  Compl., ¶ 1.  Davison alleges severe, pervasive, and ongoing harassment of African-American employees through longstanding maintenance of a racially hostile work environment.  *Id.*  In addition to injunctive and declaratory relief, Davison seeks compensatory and punitive damages.  *Id.*  In its present Motion, Defendant moves the Court to grant summary judgment on all claims asserted in Davison's Complaint.  Defendant contends that many of Davison's discrimination claims are barred by the applicable statutes of limitations, and that it is otherwise entitled to judgment as a matter of law on Davison's remaining claims.

-3-

## II. <u>DISCUSSION</u>

A.    <u>Summary Judgment Standard</u>

Rule 56(a) of the Federal Rules of Civil Procedure states that the Court shall grant summary judgment on each claim or defense on which summary judgment is sought if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

To rebut a properly supported motion for summary judgment, the opposing party must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999).  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmovant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  *Booth,* 75 F. Supp. 2d at 543.

The mere existence of a disputed factual issue does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material.  *Id*.  With regard to "materiality," only those disputes or facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment.

-4-

*Id.* (citing *Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial." *Id.* (quoting *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

B.    <u>Applicable Statutes of Limitations</u>

Davison's claims are brought pursuant to 42 U.S.C. § 2000 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"), whose respective statutes of limitations are discussed below.

1.    <u>Title VII</u>

"Title VII requires persons claiming discrimination to file a charge with the EEOC within 180 days after the allegedly discriminatory practice occurs and this period begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred." *Vadie v. Miss. State University*, 218 F.3d 365, 371 (5th Cir. 2000); *see also* 42 U.S.C. § 2000e-5(e)(1).  Although the filing of a timely charge with the EEOC is not a jurisdictional prerequisite to a suit in federal court, it is a requirement that is similar to the statute of limitations, and is therefore subject to the doctrines of waiver, estoppel, and equitable tolling. *Cruce v. Brazosport Independent School Dist.*, 703 F.2d 862, 863 (5th Cir. 1983).  Thus, a plaintiff cannot sustain a claim under Title VII for events which occurred more than 180 days before the filing of the charge of discrimination, absent a showing of waiver, estoppel, and/or equitable tolling. *Id.*

-5-

Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easily identified.  Each incident of discrimination and each retaliatory adverse employment decision constitute a separate, actionable unlawful employment practice.  *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002).  In *Morgan*, the United States Supreme Court explained that "[h]ostile work environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct."  *Id.* at 115; *see also Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) ("Under the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts."). The parties have not briefed the continuing violation theory.  However, because Davison has raised the continuing violation doctrine in his Complaint, Compl. ¶ 33, the Court will address it.

The Fifth Circuit has stated that the continuing violation doctrine "has been endorsed for use by [it] under limited circumstances."  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001).  It has explained that

> [i]n order to rely on a continuing violation theory, a plaintiff must show that the harassment within the limitations period and the harassment outside the limitations period constituted "a series of related acts" and that "an organized scheme led to and included the present violation." *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir.2004); *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001)).  This court has looked to at least three factors in determining whether acts are sufficiently related to constitute a continuing violation: (1) whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; (2) whether the acts are in the nature of recurring events, or are more in the nature of isolated events; and (3) whether the

-6-

act or acts have the degree of permanence that should alert an employee to assert his rights. *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998).

*Butler v. MBNA Technology, Inc.*, 111 F. App'x 230, 232-33, 2004 WL 2244203, *2 (5th Cir. 2004).

"[T]he continuing violation doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation." *Celestine*, 266 F.3d at 352. For discrete acts of discrimination, *Morgan* held that application of the continuing violation theory to these types of claims depends on the nature of the claim asserted:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id.* at 113.

The *Morgan* Court concluded that the continuing violation theory does not apply to Title VII claims alleging discrete discriminatory acts arising outside the applicable statutory time period. Therefore, in order to timely file suit under Title VII, the charge must be filed within 180 days of the alleged discrete discriminatory act. 42 U.S.C. § 2000e-5(e)(1). The time limitations period set forth in Title VII commences with the date of "the alleged unlawful employment practice." 42 U.S.C.

-7-

§ 2000e-5(e); *see also Delaware State College v. Ricks*, 449 U.S. 250, 259
(1980)(holding that the present day effects of past discrimination are not actionable
under Title VII); *Huckabay v. Moore,* 142 F.3d 233, 240 (5th Cir. 1998)(one time
employment event such as "demotion is the sort of discrete and salient event that
should put the employee on notice that a cause of action has accrued.").

The EEOC charge that led to this litigation was signed on January 14, 2000,
and received by the EEOC on January 28, 2000.  Charge of Discrimination,
attached as Ex. "A" to Def.'s Mot. for Summ. J.  Defendant maintains that the date
filed is January 14, 2000, and that Davison cannot recover under Title VII for
alleged discrimination or harassment occurring before July 18, 1999.  Def.'s Mem.
Br. in Support of Mot. for Summ. J. at p. 2.  However, there is Fifth Circuit
precedent indicating that the filed date would be January 28, 2000, making the
cutoff date August 1, 1999.  *See Taylor v. Gen. Tel. Co. of Sw.,* 759 F.2d 437, 441–42
(5th Cir. 1985) (charge is "filed" under Title VII when it is received by EEOC) (citing
29 C.F.R. § 1601.13(a)).  The Court need not resolve this issue since, regardless of
which date is used, the result here would not change.  Using the earlier date urged
by Defendant, which is more favorable to Davison, Davison cannot recover under
Title VII for any alleged discrete discriminatory acts which occurred before July 18,
1999.  *See Cruce*, 703 F.2d at 863-64.  Davison further bears the burden of
demonstrating that the continuing violation doctrine is applicable to any of his
claims.  *Celestine*, 266 F.3d at 352.

-8-

2.   Section 1981

Claims which assert violations of 42 U.S.C. § 1981 are governed by the same standards applicable to claims raised under Title VII, with the exception that Section 1981 claims do not require exhaustion of remedies. *Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir. 2000); *Wilkes v. Fedex Ground Package Sys.,* 359 F. Supp. 2d 539, 541 (S.D. Miss. 2005); *Ellison v. Darden Restaurants, Inc.,* 52 F. Supp. 2d 747, 754  n.7 (S.D. Miss. 1999).  Because Section 1981 does not contain its own statute of limitations, the Supreme Court has determined that certain claims brought pursuant to Section 1981, namely those made possible by a post-1990 Congressional enactment, are subject to the federal four year catch-all statute of limitations set forth in 28 U.S.C. § 1658.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  Pre-existing causes of action are subject to a "borrowed" state statute of limitations period, or the most analogous state tort statute of limitations. *Id.*; *see also Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 368 (5th Cir. 2008).

Defendant argues that, under *Felton v. Polles*, 315 F.3d 470, 474 (5th Cir. 2002), the most analogous Mississippi statute of limitations would apply to Plaintiff's claims for denial of promotions, which would be three years, rather than the federal four year catch-all statute of limitations of 28 U.S.C. § 1658.  Under the pre-1991 version of Section 1981, a failure to promote claim was actionable only if the nature of the change in position involved the opportunity to enter into a new contract with the employer, such that the promotion would rise to the level of an

-9-

opportunity for a new and distinct relationship between the employee and the employer, making it subject to the shorter Mississippi state statute of limitations. *See Jones*, 541 U.S. at 382*; Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *see also Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 341 (5th Cir. 2005) (applying Louisiana's one-year prescriptive period for tort actions to independent contractor's Section 1981 claim for failure to enter into a new contract with him); *Hubert v. City of Baton Rouge/Parish of East Baton Rouge, Dept. of Public Works*, 2009 WL 774343, *2 (M.D. La. March 20, 2009) ("Whether a one year or four year prescriptive period applies to the plaintiff's Section 1981 claim, turns on whether the promotion was an opportunity for a new and distinct relationship between the plaintiff and his employer.  If the promotion would give rise to such a new relationship, the one year period of Article 3492 is applicable.  If the circumstances of the promotion would not result in a new and distinct relationship between the plaintiff and the City-Parish, then the four year prescriptive period under federal law would apply.").

It is not clear in this case whether the nature of the changes in positions allegedly sought by Davison involved the opportunity to enter into a new contract with Defendant.  Out of an abundance of caution, the Court will apply the longer four year limitations period here.[3]  Because the original Complaint in this action was filed on March 21, 2001, Davison cannot recover under Section 1981 for any

---

[3]Applying either the four year federal or the three year Mississippi statute of limitations to the facts of this case does not change the outcome.

acts occurring before March 21, 1997.

C.     Appropriate Method of Proof

Davison attaches to his Response [467] the affidavits and depositions of

plaintiffs in other severed cases filed against Defendant, as well as other evidence

unrelated to Davison's individual claims.  While referencing the affidavit of plaintiff

Theodore Edwards, Davison states that

> specific incidents and examples of racial discrimination on the job are
> described sufficient to prove a pattern and practice of racial
> discrimination through a hostile work environment over a long period of
> time, including incidents within the statute of limitations.

Pl.'s Mem. in Supp. of his Resp., at p. 7.

Defendant replies that the "pattern and practice" method of proof is not available in

individual cases such as this one.  Def.'s Rebuttal, at p. 8.

"The typical pattern or practice discrimination case is brought either by the

government or as a class action to establish 'that unlawful discrimination has been

a regular procedure or policy followed by an employer or group of employers.'"

*Celestine*, 266 F.3d at 355 (quoting *International Brotherhood of Teamsters v.*

*United States*, 431 U.S. 324, 358–59 (1977)), *abrogated on other grounds by Nat'l*

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  The Fifth Circuit has

explained that "[t]he pattern and practice method of proof is almost exclusively used

in class actions, with individual racial discrimination plaintiffs confined to the

*McDonnell Douglas* framework."  *Id.* (citing *Scarlett v. Seaboard Coast Line R.R.*

*Co.*, 676 F.2d 1043, 1053 (5th Cir. 1982)).

Based on the foregoing precedent, the Court will not apply the *Teamsters* or

-11-

"pattern and practice" method of proof to Davison's individual claims.  *Id.; Scarlett*,

676 F.2d at 1053.  Davison is before the Court in his individual capacity, and thus,

the *Teamsters* method is not available to him.  Because Davison offers no direct

evidence of discriminatory intent, the Court will analyze circumstantial evidence

under the *McDonnell Douglas* burden-shifting framework.  *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973).  Both Davison's Title VII and Section 1981

claims will be analyzed together under this evidentiary framework.  *See Jackson v.*

*Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (holding that "claims brought pursuant

to Title VII and § 1981 are 'governed by the same evidentiary framework'" and can

be analyzed together).

  Under the *McDonnell Douglas* standard, Davison must first create a

presumption of intentional discrimination by establishing a *prima facie* case.

*Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001).  If established,

the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory

reason for its actions.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142

(2000).  The burden on the employer at this stage "is one of production, not

persuasion; it 'can involve no credibility assessment.'" *Id.* (quoting *St. Mary's Honor*

*Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).  If the employer sustains its burden, the

burden shifts to Davison to establish either: (1) that Defendant's proffered reason is

not true but is instead a pretext for discrimination; or (2) that Defendant's reason,

while true, is not the only reason for its conduct, and another "motivating factor" is

Davison's race.  *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004).

D.     Davison's Individual Claims

       Davison's individual racial discrimination claims fall into six categories:  (1)

denial of promotions; (2) layoffs; (3) denial of training; (4) "racial job tracking"; (5)

being forced to work with injuries; and (6) hostile work environment.[4]  The Court

analyzes each in turn.

       1.  Denial of Promotions

       Davison specifically charges that he has never been promoted despite being

employed for over 34 years at Defendant's shipyard, and that he has been denied

promotional opportunities for which he was qualified because of his race.  Compl.,

¶¶ 21–22.  Davison identifies the following instances where this allegedly occurred:

       a)     Starting in 1975 and onward, plaintiff made it clear that he would
              like to be selected for the position of work leaderman, a position for which
              plaintiff was qualified, but for which he was not selected because of his

       ───────────────

       [4]In his Response, Davison also complains for the first time that he was not
allowed to go on "sea trials" on ships on which he had worked, which caused a
financial loss because onboard personnel are paid around the clock.  Pl.'s Mem. in
Supp. of his Resp., at pp. 4–5; see also Aff. of William Davison, at ¶ 4, attached as
Ex. "1" to Pl.'s Resp.  Unlike some other plaintiffs, Davison did not advance this
theory in his Complaint.  He only raised a general claim that Defendant
implemented discriminatory policies and practices"[b]y denying Black employees
opportunities to go on trips or sea trials where they would be able to earn
substantial amounts of overtime."  Compl., ¶ 17(j).  Davison cannot now amend his
Complaint to add such an additional individual claim.  Even if he could, Davison's
allegations are insufficient to sustain a disparate treatment claim because he
alleges no "ultimate employment decision."  Ellis v. Principi, 246 F. App'x 867, 870,
2007 WL 2510620, *2 (5th Cir. 2007).  Moreover, Davison testified that he did not
know and could not answer whether he had been excluded from sea trials because of
his race, and he testified that he did know some African-American employees who
were allowed to go on sea trials.  Dep. of William O. Davison, at p. 108, attached as
Ex. "E" to Def.'s Rebuttal.  Summary judgment is therefore appropriate on any
claim by Davison that he was not allowed to participate in sea trials because of his
race.

race. Plaintiff and a Black woman have the most seniority in plaintiff's department, but neither has been promoted to the permanent position of work leaderman in spite of his unquestioned qualifications and years of experience. Indeed, plaintiff received a Length of Service Award in 1997; and the paperwork associated with the award stated that he is "dedicated to his job," has a "wonderful relationship with his peers," and is an "outstanding welder with six certifications."  In 2001-2003, plaintiff Davison complained to supervisors Mike Cochran and Neal Lowrey concerning the fact that Black employees were not being promoted, but the problem was not addressed.

b)      In or about 2000, plaintiff applied for Robot Welder, a position for which plaintiff was qualified, but for which he was not selected because of his race. Plaintiff was qualified to train to use the Robot welder, and in fact was offered the training, but his acceptance would have meant that he would have had to work on the second shift in order to do the training, whereas White workers could train on the first shift. Only persons who were trained were allowed to use the Robot welder, but Davison would have had to give up his seniority on first shift to move to the second shift to take the training.

*Id.*, ¶ 21.

Davison maintains that "[h]ad discrimination not prevented him for being promoted to leaderman, his career would have progressed to include Supervisory positions, such as Foreman, a position he was qualified to perform." *Id.*, ¶ 22.[5]

In order to establish a *prima facie* case of discrimination for an alleged failure to promote, Davison must show each of the following four elements: 1) that

---

[5]Defendant contends that Davison's claim that he was discriminatorily denied a promotion to foreman fails, because he never submitted an application for foreman.  Def.'s Mem. Br. in Support of Mot. for Summ. J. at p. 5 (citing Compl., ¶ 22; Oct. 26, 2010, Dep. of William Davison, at pp. 28–29, attached as Ex. "B" to Def.'s Mot. for Summ. J.).  The Court does not read Davison's Complaint or deposition as asserting that he was denied a promotion to foreman because of his race.  To the extent he raises such a claim, the Court agrees that Davison has not established a *prima facie* case of discrimination because the record is clear that he never applied for such a position.  Oct. 26, 2010, Dep. of William Davison, at pp. 28–29, attached as Ex. "B" to Def.'s Mot. for Summ. J.

he is within a protected class; 2) that he was qualified for the position sought; 3) that he was not promoted; and 4) that the position was filled by someone outside the protected class. *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 468 (5th Cir. 2001) (citing *Blow v. City of San Antonio, Texas*, 236 F.3d 293 (5th Cir. 2001)).

Davison's complaints about promotions anytime before March 21, 1997, predate the cutoff in this case for statute of limitations purposes.  Summary judgment is appropriate as to any such claims.  As for his claims that he was not selected for the position of work leaderman anytime after March 21, 1997, Davison confirmed Defendant's contention that he never asked anyone in management to promote him to a work leaderman position.  Oct. 26, 2010, Dep. of William Davison, at pp. 16–17, attached as Ex. "B" to Def.'s Mot. for Summ. J.  Nor could Davison name anyone who had been promoted to work leaderman since 1995, *id.* at pp. 18–19, or remember anyone in his department who had been promoted to that position since 1995, *id.* at pp. 28–31.  Davison did testify that his supervisor Mike Cochran temporarily assigned him work leaderman duties, but Davison was never officially promoted.  *Id.* at pp. 23–26.  However, Davison could not recall whether this occurred before or after 1995, and he stated that he did not know of anyone who received a promotion instead of him.  *Id.*  Because the undisputed evidence demonstrates that Davison did not apply for any work leaderman positions in the relevant time frame, and that the desired positions were not even filled, Davison cannot establish a *prima facie* case of discrimination for the alleged failures to promote him to the position of work leaderman.  *See Oden*, 246 F.3d at 468.

-15-

Summary judgment is appropriate as to Plaintiff's work leaderman claims.

As for his robot welder allegations, Davison admits that he was offered training to become a robot welder, an offer he declined.  Compl., ¶ 21; Oct. 26, 2010, Dep. of William Davison, at pp. 43–44, attached as Ex. "B" to Def.'s Mot. for Summ. J.  The training was scheduled to take place on the second shift, and Davison testified that he "couldn't go on second shift and [he] didn't want second shift."  *Id.* at p. 45.  Davison thought that this occurred in the 1980s, but he could not remember for sure.  *Id.* at p. 44.  However, he testified this occurred when Defendant first started using the robots, at the time when Larry Rudolph, another plaintiff, became a robot welder.  *Id.* at pp. 44–46.  Rudolph confirmed in his deposition that the first robot welder training took place in 1986.  Oct. 27, 2010, Dep. of Larry Rudolph, at p. 22, attached as Ex. "D" to Def.'s Mot. for Summ. J. This claim is therefore time barred.

    2.    <u>Layoffs</u>

Davison alleges that he

has been laid off at times during which similarly situated White co-workers with fewer years of seniority were not laid off. Plaintiff was not given the real reason why he was laid off while White co-workers with fewer years of seniority were not. Plaintiff has been laid off under such circumstances in at least the following instances:

a)    On or about October 31, 1983, plaintiff was laid off from the position of welder for three months. At the time plaintiff was laid off, plaintiff's seniority in the company was 11 years, and in the department was 9 years. White co-workers with fewer years of seniority were not laid off at that time. Plaintiff returned to work in the position of welder.

b)    On or about June 24, 1983, plaintiff was laid off from the position of welder for approximately one month. At that time plaintiff was

> laid off, plaintiff's seniority in the company was 12 years, and in the department was 10 years. White co-workers with fewer years of seniority were not off at that time. Plaintiff returned to work in the position of welder.

Compl., ¶ 23.

Both layoffs of which Davison complains clearly occurred well before the actionable time period for statute of limitations purposes. This claim is time barred.

    3.   <u>Denial of Training</u>

Davison alleges that he

> requested of his supervisor(s) in 1999 that he be allowed to receive training on the robotic welding machine. Plaintiff was qualified to train to use the Robot welder, and in fact was offered the training, but his acceptance would have meant that he would have had to work on the second shift in order to do the training, whereas similarly situated White workers were allowed to train on the first shift, without transferring shifts and losing seniority. Only persons who were trained were allowed to use the Robot welder, but Davison would have had to give up his seniority on first shift to move to the second shift to take the training. Furthermore, the selection process for obtaining training has never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

Compl.,¶ 24.

Though Davison's Complaint alleges that this denial of training occurred in 1999, as discussed above, the undisputed evidence demonstrates that the training was offered in the 1980s, most likely in 1986. Oct. 26, 2010, Dep. of William Davison, at p. 44, attached as Ex. "B" to Def.'s Mot. for Summ. J.; Oct. 27, 2010, Dep. of Larry Rudolph, at p. 22, attached as Ex. "D" to Def.'s Mot. for Summ. J. This claim is also time barred.

4.      <u>Racial Job Tracking</u>

Davison further asserts that he was subjected to "racial job tracking" by being assigned jobs which were less desirable, dirtier, and more dangerous than those of white employees.  Compl., ¶ 25.  He alleges that he

> was a gouger for 2 years before he became a welder.  When he was a gouger, he was sent to the dirtiest and most difficult jobs because of his race, assignments where similarly situated White workers were not sent. When he was called back from layoffs in 1983, Plaintiff was made to work in hottest dirtiest places that Whites were not required to go.

*Id.*

The first two years of Davison's employment would have been approximately 1972 through 1974.  *See* Aff. of William Davison, at ¶¶ 1–3, attached as Ex. "1" to Pl.'s Resp. (Davison was first hired by Defendant on November 17, 1972).  As Davison's Complaint alleges, the other instance of alleged "racial job tracking" occurred in approximately 1983.  As discussed above, both Title VII's and Section 1981's statutes of limitations bar these claims.  Moreover, this purported disparate treatment is not actionable, since Davison alleges no ultimate employment decision. *Ellis v. Principi,* 246 F. App'x 867, 870, 2007 WL 2510620, *2 (5th Cir. 2007) (holding that allegation that plaintiff was given less favorable work assignments than other employees was insufficient to sustain a disparate treatment claim because it alleges no ultimate employment decision).  Defendant is entitled to summary judgment on this claim.

5.  <u>Working with Injuries</u>

Plaintiff alleges that he

has been subject to the practice of forcing Black employees disproportionately as compared to White employees to work with injuries, without reasonable accommodation of disabilities, or without provisions being made for medically imposed work restrictions.  This has occurred in the following instances:

    a)    After plaintiff's return from outpatient hernia surgery in 1995, he was required to continue his job duties by his supervisor, who knew about Plaintiff's injury, but nonetheless required him to do heavy lifting and other duties he should not have been required to do.

    b)    Similarly, in or about 2002, after plaintiff had prostate surgery and upon his immediate return to work, he was denied light duty, while a similarly situated White colleague was allowed to work in the tool room.

Compl., ¶ 26.

During his deposition Davison acknowledged that, other than after his 1995 hernia surgery, he was never required to work with injuries or to do work he could not perform.  Oct. 26, 2010, Dep. of William Davison, at p. 36, attached as Ex. "B" to Def.'s Mot. for Summ. J.  This claim falls outside the relevant time period for statute of limitations purposes, and is time barred.  Davison also testified that he did not know if he was on work restriction at the time he was asked to lift steel after his hernia surgery, that he said nothing at the time, that he simply did his job, and that the lifting did not cause him any health problems.  *Id.* at pp. 34–35.  Summary judgment on this claim is appropriate.

6.  <u>Hostile Work Environment Claim</u>

Davison contends that throughout his employment with Defendant, he has been subjected to a hostile work environment based on his race.  Compl., ¶ 27.  Specifically, Davison alleges that "[s]tarting in 1972 through at least 2004, plaintiff has seen offensive racially derogatory writing, depictions, and/or graffiti at the west

-19-

bank restrooms." *Id.*  Davison also maintains that he has been exposed to racial

epithets and observed nooses in the shipyard, and that Defendant knew of these

occurrences but failed to promptly prevent or correct them.  *Id.*, ¶¶ 27-34.

Defendant maintains that this claim is meritless.  Def.'s Mem. Br. in Support of

Mot. for Summ. J. at p. 8.

a.  <u>Applicable Statutes of Limitations</u>

As discussed earlier, Davison cannot recover under Title VII for any alleged

discrete discriminatory acts occurring before July 18, 1999, nor can he recover

under Section 1981 for any acts occurring before March 21, 1997.  In its Brief,

Defendant maintains that acts alleged to have created a hostile work environment

which occurred before March 21, 1997, are time barred.  If Davison's allegations of

hostile work environment were viewed as discrete acts, then Defendant would be

correct in focusing its analysis only on those alleged acts which occurred after that

date.  However, Davison has raised the continuing violation doctrine in his

Complaint.  *Id.*, ¶ 33.

"[T]he continuing violation doctrine does not automatically attach in hostile

work environment cases, and the burden remains on the employee to demonstrate

an organized scheme led to and included the present violation."  *Celestine*, 266 F.3d

at 352.  Davison has not demonstrated the applicability of the continuing violation

doctrine in this case, and the Court is not persuaded that it should be applied based

upon the facts here.  Moreover, "where a pattern of harassment spreads out over

years, and it is evident long before the plaintiff sues that [he] was a victim of

actionable harassment, [he] can not reach back and base [his] suit on conduct that occurred outside the statute of limitations." *Id.* (quoting *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 344 (7th Cir. 1999)).  The Court will not apply the continuing violation doctrine to Davison's hostile work environment claim, and instead will focus only on those alleged acts which Davison maintains occurred after March 21, 1997.

### b. *Prima Facie* Case

To establish a *prima facie* case of a hostile work environment claim, Davison must show that: (1) he belonged to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Ellis v. Principi,* 246 F. App'x 867, 2007 WL 2510620, *3 (5th Cir. 2007) (citing *Frank v. Xerox Corp.,* 347 F.3d 130, 137 (5th Cir. 2003)); *see also Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir. 1996).  "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir. 1996) (Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance).

-21-

For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, and therefore be actionable, the conduct complained of must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so.  *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22 (1993); *see also Shepherd v. Comptroller of Public Accounts of State of Texas,* 168 F.3d 871, 874 (5th Cir. 1999).  Thus, not only must Davison have perceived the environment as hostile, the conduct must have been such that a reasonable person would find it hostile or abusive.  *Harris,* 510 U.S. at 21-22.

To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance.  *Id.* at 23.  No single factor is determinative.  *Id.*

Davison claims that he observed the presence of hangman's nooses in the shipyard.  Oct. 26, 2010, Dep. of William Davison, at pp. 57–59, attached as Ex. "B" to Def.'s Mot. for Summ. J.  He testified that he saw these nooses in the shipyard in the 1970s, but did not know if he had seen any since then.  *Id.*  Davison was unsure if he had seen any in the 1980s.  *Id.* at pp. 58–59.  Accepting his testimony as true, the relevant statutes of limitations applied to Davison's claims under both Title VII and Section 1981 preclude him from relying upon these incidents to support his

hostile work environment claim.

Davison further contends that he was subjected to racial epithets.  He testified that he heard the "N word" used in two instances throughout his lengthy career at the shipyard.  Oct. 26, 2010, Dep. of William Davison, at pp. 51–53, attached as Ex. "B" to Def.'s Mot. for Summ. J.  One racial epithet was made by an hourly employee over 30 or more years ago, and the other was by someone, whose name Davison did not know, an unknown amount of time ago.  *Id.* at pp. 51–56. Davison did not report either incident to management.  *Id.* at pp. 53–55.

The Fifth Circuit "has found that a regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII."  *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007) (citing *Walker v. Thompson,* 214 F.3d 615, 626 (5th Cir. 2000); *Farpella-Crosby v. Horizon Health Care,* 97 F.3d 803, 806 (5th Cir. 1996)). However, simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory charges that can survive summary judgment.  *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 347 (5th Cir. 2007) (citing *Hockman v. Westward Communications, LLC,* 407 F.3d 317, 328 (5th Cir. 2004)).  Davison has identified two racial epithets over the course of more than 30 years.  Based on the evidence before it, even assuming the incidents occurred within the relevant time period, the Court cannot say that there existed a regular pattern of frequent verbal ridicule or insults directed towards Davison.

Davison also testified that he has seen racist graffiti on bathroom stalls and a

boat at Defendant's shipyard.  Oct. 26, 2010, Dep. of William Davison, at pp. 59–60, attached as Ex. "B" to Def.'s Mot. for Summ. J.  In 2000, Defendant posted a placard in every restroom which read as follows:

### DEFACING PROPERTY

It is a violation of Company rules to deface any Company property, including but not limited to restrooms, lockers, walls, boxes and other property, by placing any inappropriate or offensive markings, graffiti or other writings, symbols, art or other material on any Company property. Persons found to be in violation of this rule will be disciplined, up to and including discharge.

Employees concerned about such writings, markings, symbols, graffiti, art or other material they see should call **Labor and Employee Relations** at 935-8729 to report it and its location.

Decl. of Dorothy Shaw, attached as Ex. "C" to Def.'s Mot. for Summ. J. (emphasis in original).

Davison testified that, since the placards were installed, he has not seen any racist graffiti at the shipyard.  Oct. 26, 2010, Dep. of William Davison, at p. 61, attached as Ex. "B" to Def.'s Mot. for Summ. J.  According to Davison, before Defendant installed the placards, he observed graffiti in just about every bathroom stall he entered.  *Id.*  However, he admitted that he never complained to anyone about the graffiti.  *Id.* at p. 62.  There is also no evidence in the record that any racially offensive graffiti was directed at Davison.  Applying the *Harris* factors to this case, Davison has not shown the frequency or severity of any racially offensive graffiti which he witnessed after March 21, 1997.

In sum, accepting Davison's testimony as true, Davison has not shown that the totality of the properly considered alleged acts occurring during the actionable time period were physically threatening or humiliating, rather than merely

-24-

offensive utterances.  The alleged conduct does not rise to the level of sufficiently frequent occurrences which permeated the work environment with racially discriminatory intimidation, ridicule, and insult, to support a hostile work environment claim.  *Harris*, 510 U.S. at 23.  Based on the totality of the circumstances, the evidence does not create a material fact question precluding summary judgment on Davison's hostile work environment claim.  Moreover, Davison has not shown that Defendant knew or should have known of the harassment and that it failed to take prompt remedial action.  This is also fatal to his *prima facie* case.  Based upon the evidence submitted and the present record, no questions of material fact exist which preclude summary judgment on this claim.

### III.  CONCLUSION

For the foregoing reasons, Davison has not met his burden of demonstrating that his claims for promotion denials, layoffs, denial of training, "racial job tracking," being forced to work with injuries, and hostile work environment can withstand summary judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, Defendant's Motion for Summary Judgment [464] filed February 14, 2011, should be and hereby is **GRANTED,** and Davison's Complaint against Defendant should be and hereby is **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 15th day of September, 2011.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE